JOHN KNOX, JAMES BOGGS, AND JAMES A. KNOX, TRADING UNDER THE FIRM OF KNOX, BOGGS, & CO., APPELLANTS, *v.* PEYTON SMITH AND OTHERS, DEFENDANTS.

A bill in chancery which recites, that the complainants had recovered a judgment at law in a court of the United States, upon which an execution had issued and been levied upon certain property by the marshal; that another person, claiming to hold the property levied upon by virtue of some fraudulent deed of trust, had obtained a process from a State court, by which the sheriff had taken the property out of the hands of the marshal; and praying that the property might be sold, cannot be sustained.

If the object had been to set aside the deed of trust. as fraudulent, the fraud, with the facts connected with it, should have been alleged in the bill.

There exists a plain remedy at law.    The marshal might have brought trespass against the sheriff, or applied to the court of the United States for an attachment.

No relief can be given by a court of equity, unless the complainant, by his allegations and proof, has shown that he is entitled to relief.

THIS was an appeal from the Circuit Court of the United States for the District of West Tennessee, sitting as a court of equity. The appellants had filed a bill against the defendants, which bill was dismissed by the Circuit Court.

The facts in the case were these.

On the 23d of March, 1839, Probert P. Collier, of the county of Tipton and State of Tennessee, executed to Peyton Smith, of the same State, a deed of trust, reciting the indebtedness of Collier to sundry persons, and proceeding as follows : —

Knox et al. *v.* Smith et al.

" Now, the above-named creditors, to wit, Robert B. Clarkson, Jordan Brown, Isaac Killough, Stephen Smith, James D. Holmes, Samuel A. Holmes, Joseph T. Collier, and Forsythe, Goodwin, & Co., merchants of New Orleans, being willing to wait and give the further indulgence of eighteen months longer from the date of this indenture with the said Probert P. Collier, upon having their debts and the interest accruing thereon ; and the said Probert P. Collier being willing to give them a certain assurance that their money shall be paid at the expiration of eighteen months from this date ; and the said Probert P. Collier being extremely desirous to save harmless and secure from all liabilities his indorsers as above described on the several notes already specified in this indenture as such indorsers.

" Now, therefore, this indenture *witnesseth*, that the said Probert P. Collier, as well in consideration of securing the said Robert B. Clarkson, Jordan Brown, Isaac Killough, Stephen Smith, James D. Holmes, Samuel A. Holmes, Joseph T. Collier, and Forsythe, Goodwin, & Co., merchants of New Orleans, in the faithful payment of their debts and interest as aforesaid, and securing and saving harmless his indorsers as aforesaid, as also the sum of one dollar to him the said Probert P. Collier in hand paid by the said Peyton Smith, the receipt whereof is hereby acknowledged, hath this day granted, bargained, sold, transferred, assigned, and set over, and by these presents doth grant, bargain, sell, transfer, assign, and set over unto the said Peyton Smith the following real estate and personal property, to wit, as hereafter described, to wit : "

(The deed then enumerated several tracts of land, some slaves, horses, mules, and furniture, and proceeded as follows.)

" And each and every of them to the said Peyton Smith, his heirs and assigns, to the proper use and behoof of the said Peyton Smith, his heirs and assigns, for ever.

" In trust, however, and to the intent an ' purpose, that if the said three notes, payable to the said Robert B. Clarkson, for six hundred and twenty-five dollars each, dates as above described ; also the note, payable to Jordan Brown, for one hundred and eighty-two dollars, on which said note there has a judgment been obtained before Robert J. Mitchell, justice for said county ; also the note, payable at the Memphis Bank, indorsed by Joseph T. Collier, James D. Holmes, and Samuel A. Holmes, for five hundred and forty-four dollars, now in judgment in the Tipton Circuit Court ; the one payable to Forsythe, Goodwin, & Co., commission merchants of New Orleans, for five hundred and sixty-one dollars, now in a judgment as above described ; also the note, payable to Isaac Killough, for four hundred and twenty-one dollars, now in a judgment as before described ; the one payable to Randolph Merchants' Association, for two hundred dollars, indorsed by Gabriel Smither, James D. Holmes,

Knox et al. *v.* Smith et al.

and Samuel Glass, dates as above described ; the one payable to Stephen Smith, for nine hundred dollars, dates not recollected ; the one payable to the Branch Bank of the State of Tennessee, at Sommerville, for five hundred and eighty-one dollars, dates not recollected, indorsed by Joseph T. Collier and James Hudley ; the one, payable to James D. Holmes, and Samuel A. Holmes, merchants, for three hundred and fifty dollars, due and payable 1st of January, 1839 ; the note, payable to Joseph T. Collier, for the sum of four hundred dollars, dates not recollected. All of the above notes not well and truly paid, with all lawful interest accruing thereon ; and if each of his indorsers, as appear on the several notes described in this indenture, are not entirely secure from each and all of their liabilities by him, the said Probert P. Collier, or some other person for him, before the expiration of eighteen months from this date ; then and in that case the said Peyton Smith, in executing this trust, hereby taken upon himself, advertise the said real and personal property for the space of twenty days, in a paper printed at Randolph, Tennessee, and by written advertisements, at four of the most public places in the county, one of which shall be at the court-house door of the county aforesaid, that he will expose to the highest bidder the said land and negroes, horses, mules, household furniture, and kitchen furniture, spinning-machine and loom, the barouche and harness, wagon and gear, and blacksmith's tools ; one of the said lots in the town of Covington, the one on which the said Probert P. Collier resides, on a particular day, for ready money ; and if the money be not still paid on that day, designated as aforesaid, then the said Peyton Smith shall proceed to sell the above described real and personal property for ready money to the highest bidder, and after such sale, to make good and sufficient deeds and bills of sale in fee for said property, conveying all the right and title the said Probert P. Collier or his heirs may have in and to the same.

" And this indenture further witnesseth, that the said Probert P. Collier is to still keep and retain the said land and personal property as above described in his own possession, subject for all losses which the said property may sustain, until the expiration of eighteen months from this date ; and provided, nevertheless, that if the said money and interest should be paid before the day of sale herein mentioned, and his indorsers secure from liabilities as aforesaid, then this indenture to be wholly void and of no effect, either in law or equity.

" In witness whereof, the said Probert P. Collier hereunto sets his hand and seal, this the 23d of March, 1839.

PROBERT P. COLLIER.    [seal.]
PEYTON SMITH.    [seal.]

" Witnessed by
   J. P. Farrington,
   F. M. Green."

Knox et al. *v.* Smith et al.

On the 4th of December, 1839, Knox, Boggs, & Co., citizens of Pennsylvania, brought a suit in the District Court of the United States, possessing Circuit Court jurisdiction, and sitting for the District of West Tennessee, against Thomas Eckford and Probert P. Collier, as indorsers of sundry promissory notes held by Knox, Boggs, & Co.

On the 8th of April, 1840, a judgment was rendered against these defendants in the above court, for the sum of $ 3,562·20.

On the 24th of April, 1840, a writ of *fieri facias*, founded on the foregoing judgment, was issued, and the execution levied on seventeen negroes and four mules, as the property of P. P. Collier, being a part of the property included within the deed to Peyton Smith.

A forthcoming bond was taken, with the following condition : —

"Now, if the said P. P. Collier shall deliver the property at Covington, on the 21st day of September, 1840, then and there to be sold to satisfy said judgment and cost, then this obligation to be void ; else, to remain in full force.

(Signed,)

|  |  |
|---|---|
| P. P. COLLIER. | [SEAL.] |
| M. BRYAN. | [SEAL.] |
| HY. FEEZER. | [SEAL.] |
| FRED. R. SMITH. | [SEAL.]" |

About this time, although the record does not say precisely when, Smith, the trustee, applied to the judge of the District Court for an injunction to restrain the sale, upon the ground that the property belonged to him and not to Collier, but the judge declined to grant it. He then applied to the Chancery Court at Brownsville (a State court of Tennessee), and, upon filing his bill for relief, obtained an injunction.

On the 21st of September, 1840, when the property was to be delivered under the forthcoming bond, the marshal made the following return.

"Bond forfeited, and sale of the negroes and mules levied on enjoined by order of the Chancery Court at Brownsville, 21st Sept., 1840.

ROB'T J. CHESTER, *Mar. West Tenn.*"

On the 27th of October, 1840, an *alias fieri facias* was issued upon the judgment in the District Court, and placed in the hands of the marshal, who levied it, on the 6th of November, upon the same negroes and mules which were the subjects of the former execution. Another forthcoming bond was given for the delivery of the property on the 5th of December, 1840.

On the 20th of November, 1840, the Chancery Court at Brownsville issued the following order.

" STATE OF TENNESSEE :

To the Sheriff of Tipton County, greeting :

" Whereas, it hath been represented unto the chancellor, in our Chancery Court at Brownsville, in the western division of the State of Tennessee aforesaid, on the part of Peyton Smith, trustee, &c., complainant, that he has lately exhibited his amended bill of complaint in our said Chancery Court, against Knox, Boggs, & Co., P. P. Collier, and Robert J. Chester, defendants, to be relieved touching the matters therein complained of; in which said bill it is, among other matters, set forth, that the said defendants are combining and confederating to injure the complainant touching the matters set forth in said bill, and that their actings and doings in that behalf are contrary to equity and good conscience.

" We, therefore, in consideration of the premises, do strictly command you, the said sheriff of Tipton county, Tennessee, that you do absolutely seize and take into your possession, immediately and forthwith, at all hazards, the following negro slaves, to wit : Jack, Jim, Jane, Marcella, Zilpha, Washington, Margaret, Doll, Bryant, Toney, Catharine, Cully, Cynthia, Sam, John, Clara, and Lucinda, heretofore levied on by the marshal of West Tennessee, as the property of said Collier, to satisfy a judgment in favor of said Knox, Boggs, & Co. ; and do you safely and securely keep said slaves, so that you have them forthcoming to abide the further order of our said Chancery Court ; and this you shall in no wise omit, under the penalty prescribed by law.

" Witness, Sheppard M. Ashe, clerk and master of our said court, at office, in Brownsville, this second Monday in November, 1840, and in the 65th year of American independence.

SHEPPARD M. ASHE, *Clerk and Master*."

On the 5th of December, 1840, when the second forthcoming bond was due, the sheriff, acting under the order of the Chancery Court of the State, and the marshal, acting under the execution issued by the District Court of the United States, both made returns.

The sheriff's return was as follows : —

" Levied this attachment on all the within-named negroes, except *Jim*, who was not found, nor was he levied on by the marshal of Tennessee.

" *Dec. 5th*, 1840. J. HORNE, *Sheriff Tipton county*."

The marshal's return was as follows : —

" The property executed, delivered according to bond ; and then arrested from me by the sheriff of Tipton, under an order of the Chancery Court at Brownsville ; bill filed ; see inclosed.

ROB. J. CHESTER, *Mar.*"

" *5th Dec.*, 1840.

*Knox et al. v. Smith et al.*

On the 3th of April, 1841, Knox, Boggs, & Co. filed a bill in the District Court of the United States (the same court in which they had obtained their judgment), reciting all the circumstances of the case, stating that Smith claimed under a fraudulent deed of trust, and alleging that a State court had no right, power, or jurisdiction to enjoin the process issued from the District Court ; that Collier and the securities upon the delivery bond combined and confederated with Peyton Smith to prevent the sale of the property levied upon, and so defeat the execution of the complainants, who had now no adequate and complete remedy at law. The bill prayed that Collier and Smith and all the securities might be made defendants to answer, and that the property might be sold to pay the judgment obtained by the complainants.

Some of the defendants demurred to the bill, but the demurrers were overruled, and they were ordered to answer.

On the 10th of November, 1841, the Chancery Court at Brownsville passed, the following decree in the case of the bill which had been filed by Peyton Smith, and in which he had obtained an injunction, as before stated.

" Be it remembered, that this cause came on to be heard on this, the tenth day of November, eighteen hundred and forty-one, before the Hon. A. McCampbell, chancellor, upon the orders *pro confesso* against said defendants. And it appearing to the satisfaction of the court, that in March, eighteen hundred and thirty-nine, defendant Collier made a deed conveying to complainant, amongst other things, the following negro slaves, to wit : Jack, Jim, Washington, Margaret, Doll, Marcella, Zilpha, Bryan, Toney, Catharine, Cully, Chloe, Phillis, Sam, John, Lucinda, and Cynthia ; which said deed was executed by said Collier to complainant in trust to secure the payment of certain debts in the same specified ; and by the terms of said deed said Collier was to remain in possession of the property conveyed in the same for the space of eighteen months from and after the execution of said deed ; and in the event that the debts specified in said deed were not paid on or before the expiration of the eighteen months from the time of the execution of said deed, the property specified in the same was to be sold by complainant, and the proceeds arising from said sale to be applied by him to the liquidation and settlement of the debts set forth in said deed.

" And it further appearing, that said deed was duly proven and registered, and that the debts specified in said deed are *bonâ fide*, and due and owing, with the exception of about five hundred dollars, which has been paid by said Collier since the execution of said deed ; and that said deed was executed in good faith, and there is no fraud in the same.

" And it further appearing to the satisfaction of the court, that after

.the execution, probate, and registration of said deed, defendants Knox, Boggs, & Co. recovered a judgment in the District Court of the United States, in the eighth circuit, for the State of Tennessee, at Jackson, for about the sum of three thousand four hundred and sixty-two dollars and twenty cents; upon which said judgment a writ of *fieri facias* issued to defendant Chester; who, by virtue of said writ of *fieri facias*, seized and took into his possession said negro slaves, Jack, Jim, Washington, Doll, Marcella, Zilpha, Bryant, Toney, Catharine, Cully, Chloe, Phillis, Cynthia, Sam, John, and Lucinda, and that defendant Chester was about to sell and dispose of said negroes slaves.

" And it further appearing to the satisfaction of the court, that defendants acquired no lien on any of said several negroes slaves by virtue of their said judgment and execution; and that said slaves ought not to be appropriated in satisfaction of the same.

" It is therefore ordered, adjudged, and decreed by the court, that the injunction heretofore awarded in this cause be made perpetual; and that said defendants Knox, Boggs, & Co., and said Robert J. Chester, be, and are hereby, restrained perpetually from selling or otherwise controlling either of said slaves under and by virtue of said judgment and execution.

" It is further ordered, that the sheriff of Tipton county deliver said negroes over to complainant; that complainant pay all costs herein expended, for which execution may issue. And that complainant recover of defendants Knox, Boggs, & Co., and Robert J. Chester, the costs of suit herein expended; and that defendant Collier recover of complainant the cost by him about this suit expended; for which executions may issue."

In April, 1842, the respondents answered the bill filed by Knox, Boggs, & Co. in the District Court. It will only be necessary to refer to the answers of Smith and Collier. Smith denied that the deed of trust made to him was fraudulent as against creditors, but averred that the same was made in good faith; that he was governed by no other feeling or desire than a wish to discharge his duty as trustee; that the *cestui que trust* looked to him to protect the property; denied all combination and confederation with any person, &c., &c. Collier admitted the truth of the facts as they are set forth in the preceding part of this statement, denied that the deed to Smith was fraudulent, but averred that it was made in good faith, &c., &c.

In May, 1842, a general replication was filed by the complainants.

On the 5th of August, 1842, interrogatories were filed on the part of the complainants, and the depositions of four person taken. Chester, the marshal, was asked to state the value of the property conveyed by the deed of trust, to which he answered as follows.

*Answer.* " I believe, from the ages, &c , of the negroes mentioned

in the deed of trust, and what I saw of them when delivered to me, that they were worth, at the date of conveyance, seven to eight thousand dollars ;. I do not know what the. mules and horses are worth, nor am I acquainted with the value of the land or the town lots."

Harris and Smith answered as follows.

*Answer.* "I, J. W. Harris, have examined the deed referred to in said interrogatory, and suppose the negroes, judging from their age and size, as stated in said deed of trust, to have been worth, at the date of said deed, seven thousand six hundred and fifty dollars ; not being personally acquainted with but few of them, can only state their value from what appears to be their ages in the deed. Horses and mules supposed to be worth four hundred dollars ; household and kitchen furniture supposed to be worth four hundred and eleven dollars, including spinning-machine, barouche, blacksmith's tools, and loom. As to the land, I have no idea what it was worth, never having been upon it that I know of, and not being acquainted with the value of land."

" I, A. W. Smith, answer and say, that I am acquainted with the property conveyed in the deed mentioned in the above interrogatory, and believe it to have been worth, at the date of the said deed, ten thousand three hundred and sixty-six dollars."

Clarkson was interrogated as to the amount which Collier owed to him, to which he responded, that it was a balance of eleven or twelve hundred dollars.

On the 16th of October, `43, the cause came on to be heard on bill, answers, replication, and proof, when the bill was dismissed, with costs. From which decree an appeal brought the case up to this court.

The case was argued by *Mr. Brinley*, for the appellants, and *Mr. Milton Brown*, for the appellees.

*Mr. Brinley*, for the appellants.

It may be proper to make two statements, preliminary to arguing the points which are most material. The one is, that the original action was instituted in the District Court of the United States for West Tennessee. That was a correct proceeding, because that court had Circuit Court jurisdiction imposed upon it by the act of January 18th, 1839. 5 Lit. & Brown's ed. 313.

The other remark is, that the delivery bonds adverted to were taken in conformity to the laws of Tennessee. They provide, that when any execution may be levied on real or personal property, if the debtor shall give sufficient security to the officer to have the goods and chattels forthcoming at the day and place of sale, it shall be the duty of the officer to take a bond payable to the creditor for double the amount of execution, reciting the service of

the execution, and the amount of the money due thereon, conditioned for the true performance of the same.   Laws of Tennessee, 1801, ch. 13 (Caruthers & Nicholson's Compilation, 129).

The act of Tennessee of 1831, ch. 25, provides, in the first section, that the securities in such a bond, if forfeited, shall not be responsible for more than the value of the property.   The second section provides, that if an execution be levied upon personal property, and bond and security shall be given for the delivery of the property upon the day of sale, and the bond shall be forfeited, in whole or in part, then the officer shall proceed to levy upon so much of the defendant's property as may be found, as shall be sufficient to satisfy the execution ; if he finds no property of the defendant, then he shall levy upon property of the security or securities in said forfeited delivery bond.   Laws of Tennessee (Caruthers & Nicholson's Compilation), 129.

Let us now pass to the consideration of the points arising out of an examination of the deed of trust.   It is dated March 14th, 1839 ; and by it Collier conveys to Smith six parcels of real estate, negroes, horses, mules, furniture, and other property, in trust, to pay certain notes with interest, provided they are not paid by said Collier, or some other person for him, before the expiration of eighteen months from the date of the deed ; if not paid by that time, Smith is to sell the property at auction for ready money. By the deed, Collier is to keep and retain the land and personal property in his own possession until the expiration of said eighteen months.

The deed is made to secure the payment of twelve notes, amounting to a trifle over $ 6,000.   The value of the property conveyed, according to the testimony of Smith, is $ 10,366. Such an amount of property conveyed to secure, not all, but a portion, of Collier's creditors, without any stipulations for a release, indicates fraud in regard to other creditors ; more especially as there is no proof of the validity of the debts.   By the laws of Tennessee, every gift, &c., made with the intent to delay or defraud creditors of their just and lawful actions, suits, debts, &c., are wholly and utterly void, except as against the person making the same.   Act of 1801, ch. 25, § 2.

Again ; the deed of trust had matured before the second levy of the plaintiff's execution, and the property remained in the hands of the debtor ; that is, the trustee had not taken possession of it at the time limited for the payment of the money.   There was no proof that the trust was *bonâ fide*.   The legal presumption upon this state of facts is, that the trust is fraudulent and void as to creditors, and the *onus* lies on the trustee to prove the contrary, and to prove the validity of the debts.

Possession remaining with the vendor, after an absolute sale, or with the grantor or mortgagor in deeds of trust and mortgage, after

the time when the debt secured by the latter should be paid, is *primâ facie* evidence of fraud ; but the presumption of fraud may be repelled by proof of fairness in the transaction, and that the instruments were executed for an adequate consideration. Maney *v.* Killough, 7 Yerger, 440.

The marshal, therefore, had a right to levy on the slaves as the property of the debtor. The property had been levied on by the marshal, on the first execution, and a bond taken before the trust matured, and the bond was forfeited. But that did not prevent the trustee from taking possession of the negroes after the bond was forfeited ; because a forfeiture of the bond released the property from all lien or liability on account of the levy, and it again became a part of the debtor's general property, and might have deen taken by the trustee, without legal hindrance, so far as the first levy was concerned.

Where an execution is levied, and bond taken for the delivery of the property on the day of sale, the lien of the execution continues until the bond is forfeited. It is then discharged, and the property is subject to the claims of other creditors. Malone *v.* Abbott, 3 Humphrey, 532.

The levy of the marshal was therefore valid as against the trust, which, for want of proof to the contrary, was fraudulent. This levy vested the title in the marshal for the benefit of the plaintiffs, to pay their debt by execution ; it was a lien created by law, which could not be enforced at law, because the marshal was forcibly prevented by the interference of the State tribunals, called into existence by the defendants. Their only remedy was in equity to enforce their lien, to prevent multiplicity of suits, conflicts of jurisdiction, and to inquire into the fraudulent conveyance by the deed of trust.

A judgment creditor, having a lien on personal property, has a right to come into chancery to remove obstacles thrown in the way of the due execution of his process by a levy and seizure of the property by a junior judgment creditor. Parrish *v.* Saunders et al., 3 Humphrey, 431. This is an analogous case.

The courts of Tennessee have decided, that a suit in equity can be brought for slaves, from the peculiar nature of the property. Loftin *v.* Espy, 4 Yerger, 84. *À fortiori,* to enforce a lien upon them.

Lastly ; the State court had no authority to enjoin an execution issuing from a court of the United States. McKim *v.* Voorhies, 7 Cranch, 279 ; 3 Story on the Constitution, 625, §§ 1751, 1752 ; United States *v.* Wilson, 8 Wheat. 253 ; 1 Kent's Comm. 409. It is true that the national courts have no authority (in cases not within the appellate jurisdiction of the United States) to issue injunctions to judgments in the State courts ; or in any other manner to interfere with their jurisdiction or proceedings. 3 Story on the

Constitution, 626, § 1753 ; Diggs et al. *v.* Wolcott, 4 Cranch, 179. But the federal court had complete jurisdiction in this case, by injunction, to prevent the sale of the property levied upon by execution from its court. Parker *v.* The Judges of the Circuit Court of Maryland, 12 Wheat. 561. And as the State and federal courts had concurrent jurisdiction (Act of September 24th, 1789, § 11, ; 1 Lit. & Brown's ed. 78) of the action brought at law, and the suit in equity which arose out of it, the federal court having first acquired jurisdiction, the same cannot afterwards be taken from it by the State courts. Under such circumstances, the aid of the United States court is not an irregular interference with the proceedings of the State tribunal.

If the State courts have jurisdiction to enjoin the marshal from selling specific property in possession of the defendant, they may enjoin for all his property, or for any number of adverse claimants ; and thus, in effect, entirely defeat the plaintiff's execution. At the same time, an injurious conflict of jurisdiction would be produced, inconsistent with the harmony which ought to exist between the State and federal jurisdictions. " Where the jurisdiction of the federal courts has once attached, no subsequent change in the relation or condition of the parties will oust the jurisdiction. The strongest considerations of utility and convenience require that, the jurisdiction being once vested, the action of the court shall not be limited, but that it should proceed to make a final disposition of the subject." United States *v.* Myers. et al., 2 Brockenbrough's Rep. 516.

*Mr. Milton Brown,* for the appellees.

The principal and leading question in this case arises on the demurrer to the bill ; for if this be adjudged for the appellees, there is an end of the case.

The bill, if its allegations be true, states a case of clear and unembarrassed remedy at law. When analyzed, it amounts to this:—— That complainants had recovered a judgment at law, on which execution issued, and had been levied by the marshal of West Tennessee, on seventeen negroes and four mules, the property of Collier, one of the debtors in the execution, for the forthcoming of which, on the day of sale, a delivery bond had been taken, with sureties. That one Peyton Smith had applied to the Circuit Court of the United States, from which the execution had issued, for an injunction to restrain the sale of said negroes ; which application, however, was refused by the court. That afterwards, the property not having been delivered on the day of sale, the bond was forfeited ; and on this judgment of forfeiture another execution issued against the defendants in the original judgment, and also the sureties in the forfeited delivery bond ; on which last execution another levy was made, and another del very bond, with new surety, taken.

The bill then adds : — " Upon this last execution the marshal made the following return : " — " The property executed, delivered according to bond, and then arrested from me by the sheriff of Tipton, under order of the Chancery Court at Brownsville, 5th December, 1840."

The next two paragraphs then disclose the points on which the supposed equity of the bill is made to rest.    They are as follows.

" And your orators further show, that the said Peyton Smith, although your honor refused to grant an injunction restraining the sale of said negroes levied upon, has, by some means or other, procured from the State courts of the State of Tennessee a process of injunction; or some other process, enjoining the sale of said negroes and property levied upon by virtue of the executions issuing from your honorable court, and has procured one Josiah Horne, the sheriff of Tipton county, a citizen of the State of Tennessee, to arrest and take possession of said negroes from the custody of the marshal of this court ; and the said Josiah Horne has still possession of said property so levied upon as aforesaid, and refuses to deliver the same to the marshal of the Western District, to be sold according to law.

" Your orators further show, that said negroes and mules were the property of said Probert P. Collier, and liable to be sold for the debt due to your orators, and that the State courts had no right, power, or jurisdiction to enjoin the process issued from this honorable court ; and your orators believe, and so charge, that the said Collier and the securities upon said delivery bond combined and confederated with said Peyton Smith to prevent the sale of the property levied upon, and so defeat the execution of your orators ; and your orators have now no adequate and complete remedy at law."

On these vague uncertainties and allegations, meaning nothing and amounting to nothing, the debtors in the original judgment, the sureties to both the delivery bonds, and Peyton Smith and the sheriff of Tipton, are all made defendants.    And it is only remarkable, that in this wholesale business, the chancellor of West Tennessee was not included.

The prayer of the bill for specific relief is, — 1. That the negroes " be sold to pay the judgment due to your orators."    2. " That said defendants be jointly and severally bound personally to pay said judgment and interest to your orators."    And lastly, — " That said negroes be forthcoming, to abide the decree of this honorable court."    An injunction was prayed for, but not granted.

To this bill the defendants severally demurred.    The demurrers were overruled by the court below, and the defendants required to answer.    And now comes up the question, whether there is sufficient equity in the bill, and stated with sufficient legal certainty, to authorize a decree to be made on it.

And first, as to the defendant Peyton Smith, against whom there is equity, if against any one. The point is, the improper suing out of process and arresting the property from the possession of the marshal.

If it be the design of the bill to invoke the chancery powers of the court, to control or decide any real or supposed conflict between the federal and State judiciaries, the exercise of such a power would be alike unwarranted and dangerous.

But this is probably not the object of the bill. It proceeds on the ground that the process was wholly and absolutely void. What the process was, whether an injunction or a final process of execution, either in law or chancery, is not stated. The vague and unmeaning allegation is, that it was " a process of injunction, or some other process."

Nor is it stated on what this very uncertain process was sued out, or on what it was founded ; whether on a final decree in chancery, on a final judgment at law, or on an application for an injunction, does not appear with any degree of legal certainty. The allegations are, that said Peyton Smith, " by some means or other," " procured from the State courts of the State of Tennessee a process of injunction, or some other process," by which the sale of the slaves by the marshal had been prevented ; and that the State courts " had no right, power, or jurisdiction " to issue this process.

Now, if these allegations be true, the process, whatever it might be, was absolutely void, and all acting under it trespassers. The marshal should have paid no attention to it ; and if the property was taken without his consent, an action of trespass or trover, in his name, by virtue of his levy, was the plain remedy. If the process in the hands of the marshal was, as is here alleged, wrongfully and unlawfully obstructed or interfered with, it certainly furnishes no ground on which to invoke the chancery powers of the court. The case would be much nearer the province of a grand jury than the conscience of a chancellor.

In this it is not designed to intimate, that, in point of fact, there was any unlawful or improper interference with the rights of the marshal or the complainants. Nor is it designed to intimate that there was any conflict of jurisdiction between the federal and State courts. It is believed there was no such interference, and no such conflict. But for the purposes of the argument on the demurrer, the facts are taken as stated in the bill.

The attempt in the appellant's brief to sustain the bill, on the ground of its being filed to set aside a fraudulent deed of trust, finds no support in the allegations or frame of the bill itself. The case made in the bill is the alleged improper issuance of the process from the State courts, and the seizure of the property. On what this process issued, as already clearly shown, is not stated. There

Knox et al. *v.* Smith et al.

is nothing on the face of the bill to show, with sufficient legal cer-
tainty, that the existence of a deed of trust is the subject of com-
plaint.

"Every material fact to which the plaintiff means to offer evi-
dence ought to be distinctly stated in the premises." Story's Eq.
Pl. § 28. If fraud is charged, it must be distinctly and clearly
set out. Story's Eq. Pl. § 251.

The only reference in the bill to a deed of trust is a mere his-
torical reference in the statement that Peyton Smith had applied
to the Circuit Court of the United States for an injunction, which
was refused. It is not charged that any other or further use was
ever made or intended to be made of it.

Before the issuance of the "process" from the State courts,
of which complaint is made, there had, as appears on the face of
the bill, been an entire change in the nature of the question. The
delivery bond had been forfeited, a new statutory judgment had
attached, a new execution had issued, embracing not merely the
former defendants, but the sureties in the delivery bond also, a new
levy under this execution had been made, &c., &c. This "pro-
cess," therefore, which is spoken of in the bill in such remarkably
indefinite terms, might have been founded on an intervening judg-
ment or decree in chancery, taking priority of lien, as happened
in the case of Brown *v.* Clarke, decided at the present term of this
court. In that case it was decided that, on the forfeiture of a de-
livery bond, the first lien was extinguished and a new lien attached,
and that intervening liens might take precedence. May this not
have been the case in this very instance, so far as any thing appears
on the face of the bill? In fact, the language of the bill favors
this conclusion. It says that, "by some means or other," process
was sued out. Does this not leave it wholly uncertain whether
this process was obtained by "means" of a deed of trust, or by
that "other" means referred to? But again; the bill says there
was sued out "a process of injunction, or some other process,"
thus leaving it entirely uncertain what that "other process" was.
Might not that "other process" here referred to have been
founded on an intervening judgment or decree, creating a prior
lien, and entitled to prior satisfaction?

These considerations are deemed sufficient to show that the
reference to the deed of trust in the bill is too indefinite and un-
certain to require an answer, or form an issue, and can furnish no
possible ground for equitable interference. A statement of facts,
to form the basis of relief, must not be vague and uncertain. And
if, as in this case, they are stated in the alternative, or are other-
wise left doubtful, it is such uncertainty as will be bad on general
demurrer. Story's Eq. Pl. §§ 243 – 249 and 450.

Upon what ground the sureties in the delivery bonds have been
made parties it is hard to perceive. Complainants already had

judgments and executions against them on the forfeiture; what more did they want? There is nothing in the bill against them, except a general charge of combination and confederacy, which cannot be a sufficient ground of jurisdiction; and, if charged, need not be answered. Story's Eq. Pl. §§ 29 and 856.

If the demurrers are sustained by the court, there is, of course, an end of the case; should they be overruled, another question presents itself. Can the reference to a deed of trust, in the answer, put that in issue which was not substantially relied on in the bill? That it cannot is clear. Gresley on Ev. 22; Story's Eq. Pl. § 36, in note; Boone *v.* Chiles, 10 Peters, 209; Harrison and others *v.* Nixon, 9 Peters, 503; Jackson *v.* Ashton, 11 Peters, 249. In this last case the court say, — "It may be proper to observe, that no admissions in an answer can, under any circumstances, lay the foundation for relief under any specific head of equity, unless it be substantially set forth in the bill."

But there is another reason why the statement in the answers, in the present condition of the case, cannot be regarded. The real persons interested in the deed of trust are not made parties; and this may also be regarded as another proof that the bill is framed with a view to no such end. Peyton Smith is a mere trustee, without interest; his answer cannot prejudice the rights of the *cestuis que trust*; and, though a party of record, is a competent witness. Gresley on Ev. 242, 258. The true rule seems to be, that the *cestuis que trust* should be made parties in all cases where the "existence or enjoyment of the property is affected by the prayer of the suit." Calvert on Parties, 212. To make, therefore, the admissions or statements in the answers of those having no interest in the trust work an injury to those who hold the real interest, would be to violate not merely the established rules of pleading and evidence, but the most obvious rules of substantial justice.

While it is believed that this is the law of the case, and that no decree, on several grounds, can be made touching the rights of the *cestuis que trust*, it is, with equal confidence, believed that there is not the slightest ground to infer fraud in the execution of the trust. It was designed to give a preference to Collier's own creditors over debts for which he was a mere security. This he had a lawful right to do. The debts designed to be preferred amounted to over seven thousand dollars, besides interest. The highest estimate placed on all the property is $10,366. But this is palpably an overestimate, as is proved by the fact that one witness says the seventeen negroes were worth $7,650; while another witness thinks they were worth seven or eight thousand dollars. And yet the face of the bill shows, that the same negroes were valued on each levy by the marshal when inserted in the delivery bonds; the first time

valued at $4,100, and the last time at $4,250. This proves that
the estimate attempted to be placed on the property, for the pur-
poses of this cause, is entirely too high. It is believed that at no
time would it have sold under the hammer for enough to meet the
debts named in the deed of trust.

One other suggestion will close this brief. The question of the
validity of this deed has been before the Chancery Court of the
State, where the parties in interest have been properly represented,
and the result has been a decision in favor of the rights of the *ces-
tuis que trust*; and it is fair to suppose that the trust, under the
direction of the court, has, before now, been wound up, and justice
done.

*Mr. Brinley*, in reply.

1. It is insisted by the counsel for the appellees, that there was a
remedy at law; that if the property was taken from the marshal
without his consent, he had a remedy by action of trespass or
trover. This objection is anticipated and met in the opening argu-
ment for the appellants.

2. It is contended that there were too many persons made de-
fendants by the bill. Who are they? Peyton Smith, the person
claiming the property under an alleged fraudulent deed of trust;
Collier, the assignor in said deed. The former should be included
beyond a doubt; so, too, the latter. Where the assignment is not
absolute and unconditional, or there are remaining rights or liabil-
ities of the assignor, which may be affected by the decree, there
the assignor is not only a proper, but a necessary, party. Story
on Eq. Pl. § 153. Eckford, being one of the judgment debtors,
was of course a party. Bryan, Feezer, and Smith were securities
on the delivery bond given on the levy of the first execution; they,
together with Boon, were securities on the delivery bond given on
the levy of the second execution. They were all made parties to
the bill, on the principle that those in interest must be brought into
court. By the statutes of Tennessee, as sureties to a forfeited
delivery bond, their property might be levied on, and they had a
direct interest in the subject. Besides, they were distinctly charged
in the bill as confederating with Collier and Smith to prevent the
sale of the property levied on. Horne was the sheriff who arrested
the property from the marshal, and he was therefore made a party.
This "wholesale business" was but a compliance with the rules
of equity applicable to the circumstances.

3. It is then contended that there are not parties enough; that
the *cestuis que trust* are not included.

It may be true, as a general rule, that all persons interested in
the subject of a suit should be made parties as plaintiffs or defead-
ants, in order that a complete decree may be made; but there are
exceptions. Thus, residuary legatees are interested in the object

of a suit by a creditor against the executor, to establish his debt or claim against the estate ; for the establishment of such debt or claim goes *pro tanto* in direct diminution of their interest in the residue. Yet they are never required to be parties. Calvert on Parties, ch. 1, p. 5.

So trustees for the payment of debts and legacies may sustain a suit either as plaintiffs or defendants, touching the trust estate, without bringing the creditors or legatees before the court as parties. Fenn *v.* Craig, 3 Younge and Collier, 216.

In case of assignment for benefit of creditors, the assignees may file a bill relative to the trust estate, without making the creditors parties ; for the assignees are the proper representatives of all of them. In a suit to set aside an assignment as fraudulent, it is sufficient to make the fraudulent assignors and assignees parties. Wakeman *v.* Grover, 4 Paige, 23.

In the present case, Smith, the trustee, must be considered as the representative of the interest of all parties. It was not necessary to make the *cestuis que trust* parties ; the complainants knew not who they were. *Nemo tenetur divinare.*

4. The bill is said to be vague and unmeaning, because it states that " a process of injunction, or some other process," enjoining the sale, proceeded from the State court. The bill states, in the words of the return on the *fi. fa.*, that the property was arrested from the marshal " under order of the Chancery Court at Brownsville." It then states, in the next paragraph, in reference to this order and arrest, that it was by " an injunction or some other process." If the language of the return had been used in that paragraph, it would have been sufficiently certain ; the alternative phrase employed is not less so.

The sections in Story on Eq. Pl., referred to by the counsel for the appellees, are to the point, that when the allegations in a bill are extremely vague, loose, and uncertain, or where the title of a plaintiff is stated in the alternative, so that the respondent does not know what he is to answer, they are not sufficient.

A general charge or statement of the matters of fact is sufficient, and it is not necessary to charge minutely all the circumstances which may conduce to a general charge. Story on Eq. Pl. § 28.

Here the general charge is, that the sale on the execution was enjoined by process from the State court, and the property arrested from the marshal. That is minute enough, particularly as the precise character and appellation of the process were known to Smith, who obtained it. Moreover, a charge in general terms, where it is the point on which the merits of the cause turn, and does not come in collaterally and incidentally, will warrant the production of evidence to particular facts. 2 Atk. 333, 337.

A plaintiff is not bound to set forth all the minute facts which go

Knox et al. *v.* Smith et al.

to constitute a charge ; and where the title to relief will be precisely the same in each case, the plaintiff may aver facts of a different nature, which will equally support his application.    Story on Eq. Pl. §§ 252, 254.

The cases cited by the counsel for the appellees, from the reports of this court, are to the undisputed point, that a party is not allowed to state one case in a bill or answer, and make out a different one by proof.    No such attempt is made in this case ; the allegation in substance is, that an injunction, or a process of like nature issued ; that is put in issue.    The proof, as obtained from the admissions in the answers of Smith, Collier, Feezer, Bryan, Horne, and Boone, is within the allegation, that an injunction issued.    In the case of Jackson *v.* Ashton, 11 Peters, 249, the court said, — "The answer of the defendant is broader than the allegations in the bill ; and, although such parts of the answer as are not responsive to the bill are not evidence for the defendant, yet the counsel on both sides have considered the facts disclosed as belonging to the case ; and if the facts in the answer, not responsive to the bill, are relied on by the complainants' counsel as admissions by the defendant, he is entitled, thus far, to their full benefit."

So here the counsel, throughout the progress of the cause, have considered the fact that an injunction issued as belonging to the case.    It was disclosed (admit it for the argument) in the answer of Smith, though not substantially set forth in the bill ; yet the complainants shall have the full benefit of the admission.

The words, "or other process," may be considered surplusage.

5. It is said there is nothing on the face of the bill to show that the deed of trust was the subject of complaint.

The bill expressly states, that Smith claimed the property under a fraudulent deed of trust, and that he pursued that claim by the intervention of the State court.    An illegal proceeding, based on a fraudulent conveyance, is the charge.    The reference to the deed of trust is said to be in the statement.    There it ought to be ; for the statement constitutes the real substance of a bill.    Story on Eq. Pl. § 27.

6. The "process" from the State court, it is argued, may have been founded on an intervening judgment, creating a prior lien, &c.    Such a supposition is wholly at war with the true state of the case, as disclosed by the allegations in the bill, and the admissions in the answers.

7. The counsel for the appellees states, that "the highest estimate placed on all the property is $10.366" ; and therefore there is no reason for inferring fraud.    Fraud may not be conclusively established from that circumstance only ; but it is one of a number of circumstances which unitedly afford strong presumption of fraud in regard to creditors.

8. The closing remark of the counsel for the appellees, that

the validity of the deed of trust has been established by the court of chancery of the State, is, as it purports to be, a " suggestion," and which cannot affect the decision of this court.

Mr. Justice McLEAN delivered the opinion of the court.

This is an appeal from the decree of the Circuit Court for the District of West Tennessee.

In their bill the complainants state that they recovered a judgment in the Circuit Court against Thomas Eckford and Probert P. Collier, for the sum of three thousand four hundred and sixty-two dollars and twenty cents, &c. ; and that execution was issued the 24th of April, 1840, which, about the 18th of July ensuing, was levied on seventeen negroes and four mules ; and that the marshal took a delivery bond and security, under the statute of Tennessee.

That one Peyton Smith, a citizen of the State of Tennessee, pretending to claim said property levied upon by virtue of some fraudulent deed of trust executed by Probert P. Collier to him, filed a bill, which prayed for an injunction, in the Circuit Court, and which was refused. That the delivery bond being forfeited, an execution was issued on it, against the principals and sureties, which was levied upon the same negroes and mules ; upon which execution the marshal returned that " the property levied on had been taken from him by the sheriff of Tipton county, under the order of the Chancery Court, at Brownsville, 5th December, 1840." The bill alleges that the negroes and mules belonged to Collier, and it prays that they may be sold in satisfaction of the judgment.

There is no allegation in this bill which authorizes a court of equity to take jurisdiction of the case. Fraud is not charged, nor is any thing stated going to show that the remedy at law is not complete. It is stated that Peyton Smith, pretending to claim the property, after the first levy, by virtue of some fraudulent deed of trust executed to him by Collier, applied to the Circuit Court, by bill, for an injunction, which was refused. The present bill was not filed by the complainants until after execution was issued on the delivery bond and levied, and the property was taken, as returned by the marshal, under State process.

Now, if the object had been to set aside the deed of trust, as fraudulent, the fraud, with the facts connected with it, should have been alleged in the bill. Or if the negroes and mules were about to be taken out of the State, and beyond the jurisdiction of the court, unless restrained by an injunction, such fact should have been stated. But the principal allegation in the bill is, that under the State authority the sheriff had no right to take the negroes, &c. If this be admitted, it does not follow that the remedy of the complainants is in a court of equity. On the contrary, from the showing in the bill, there is a plain remedy at law. The marshal might

have brought trespass against the sheriff, or applied to the Circuit Court for an attachment.

Out of the answer which sets up the deed of trust, the complainants insist they are entitled to relief. Now no relief can be given by a court of equity, except a proper case be made in the bill. The inquiry is not only whether the defendant, from his own showing or by proof, has acted unjustly and inequitably, but also, whether the complainants, by their allegations and proof, have shown that they are entitled to relief.

The decree of the Circuit Court is affirmed, with costs.